**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 07 CR 351-2** |
| | ) | **Judge Joan Gottschall** |
| | ) | |
| | ) | |
| **DAVID VANCE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DAVID VANCE'S REPSONSE TO THE GOVERNMENT'S MOTION *IN LIMINE*
TO BAR DEFENSE EXPERT TESTIMONY**

David Vance, by his attorneys, Ellen R. Domph and Paul M. Brayman, hereby submits

the following response to the government's motion *in limine* to bar defense expert testimony:

**I.      Introduction**

At the outset, it should be noted that the government devoted a third of its motion

condemning defense counsel for the manner in which they chose to prepare Mr. Vance's defense,

particularly concerning the evaluation of physical evidence and development of expert

testimony.  (Govt motion, pp. 1-4).   This reproach is nothing more than an attempt to deflect

from the actual issue before this Court-the botching of the crime scene by law enforcement

agents who are presumed to have specialized training, who are required to have specialized

training, and who failed to adhere to that specialized training and the strict standards

promulgated by their own agencies.

Trying to disqualify a genuine expert is the government's last-ditch effort to cover-up the

debacle created by its agents-the crime scene responders. Larry Dehus, the defense expert, will

serve to enlighten the jury; the government in its effort to bar his testimony wants only to secrete

the failings of its agents and mislead the jury into believing its evidence is pristine and worthy of

belief.

There is no question that Larry Dehus is qualified and the subject matter that he will

address is generally accepted and reliable in the field of forensic science. The government is not

entitled to a *Daubert* hearing or any other evidentiary proceeding. The reasons are

straightforward and set forth below.

## II.     A Daubert Hearing is Unwarranted

In a somewhat tangled argument, the government contends that a *Daubert* hearing is

necessary to assess the admissibility of Mr. Dehus' proposed testimony.  (Govt motion, p. 9).

The government couldn't be more wrong.  Mr. Dehus' proposed testimony is relevant, generally

accepted, reliable, and will assist the trier of fact in understanding the evidence at issue, pursuant

to *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), its progeny, and Federal

Rules of Evidence 401 and 702.

### Admissibility of Expert Testimony

When a party moves to introduce scientific, technical, or specialized expertise, this Court

acts as a "gatekeeper" to ensure the evidence is relevant and reliable.  *Daubert v. Merrell Dow*

*Pharmaceutical*, 509 U.S. at 589. *Daubert* enumerated five, non-exhaustive factors a court may

consider in determining reliability, (1) whether the theory has been tested; (2) whether the theory

has been subject to peer review and publication; (3) the potential rate of error; (4) whether there

are standards governing the theory or technique, and (5) general acceptance in the relevant

community. *Daubert*, 509 U.S. at 593-94.  While *Daubert* specifically concerned scientific

expertise, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) clarified that a court's

gatekeeping function also applies to expertise deemed "technical" or "specialized knowledge"

under Federal Rule of Evidence 702.  *Kumho Tire* further held that a court's "gatekeeping

inquiry must be tied to the facts of a particular case," and that the specific reliability factors

posited by *Daubert* may or may not be pertinent, "depending on the nature of the issue, the

expert's particular expertise, and the subject of his testimony."  *Kumho Tire*, 526 U.S. at 142,

150.  Ultimately, a court has broad latitude in how it chooses to determine reliability.

Federal Rule of Evidence 702 presents further requirements before expert testimony may

be admitted.  Rule 702 states:

> If scientific, technical or other specialized knowledge will assist
> the trier of fact to understand the evidence or to determine a fact in
> issue, a witness qualified as an expert by knowledge, skill,
> experience, training, or education, may testify thereto in the form
> of an opinion or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product of reliable
> principles and methods, and (3) the witness has applied the
> principles and methods reliable to the facts of each case.

Fed. R. Evid. 702.  Thus, under Rule 702, expert testimony may be admitted when the witness'

specialized knowledge is helpful to the jury's understanding of the case.  *United States v.*

*Navarro*, 90 F.3d 1245, 1261 (7th Cir. 1996).  So long as expert testimony is helpful and relevant

with respect to an issue in the case, "the trial court is not compelled to exclude the expert just

because the testimony may, to a greater or lesser degree, cover matters that are within the

average juror's comprehension."  *United States v. Hall*, 93 F.3d 1337, 1342 (7th Cir. 1996).

Importantly, this Court need not hold a pretrial hearing into the admissibility of Mr.

Dehus' testimony to fulfill its gatekeeping obligations under *Daubert*.  *Kirstein v. Parks Corp.*,

159 F.3d 1065, 1067 (7th Cir. 1998). As the Supreme Court  emphasized, courts must be

afforded wide latitude in determining whether to admit expert testimony and how to determine

reliability.  *Kumho Tire*, 526 U.S. at 152. So long as there is a sufficient basis for a decision, the

court may consider the admissibility of expert testimony *sua sponte*.  *Kirstein*, 159 F.3d at 1068.

**Mr. Dehus' Testimony is Reliable & Generally Accepted**

Turning to the case at hand, Mr. Dehus, a forensic scientist, will testify regarding the proper methodology and procedures for the collection, documentation and processing of evidence, and the shortcomings of the government's agents in these areas. (Dehus Disclosure, p. 1). The government's contention that Mr. Dehus' conclusions are "unsupported by a sufficiently reliable basis in science or technical knowledge" is pure nonsense. Mr. Dehus' opinions are based on decades of professional experience, specialized training in the field of forensic science, as well as uniform protocols in the field of forensic science for evidence collection, handling, and processing.

The government takes issue with Mr. Dehus' opinion that the evidence collection procedures used in this case resulted in evidence being contaminated, calling this conclusion "unsupported." (Govt motion, pp. 11-12). To the contrary, Mr. Dehus' opinion is consistent with the specialized training received by and the protocols followed by forensic scientists universally and by law enforcement agencies, including those that processed the crime scenes in this case.

For example, Mr. Dehus opines that "[t]he latex gloves were improperly collected in that as many as ten gloves were placed together in a single package as opposed to being properly packaged separately." (Dehus Report, p. 2). The Chicago Police Department promulgates this principle in training its recruits, instructing, **"[n]o item should come in contact with any other item and each item should be placed in separate and clean containers."** Chicago Police Department Basic Recruit Training at 13-14 (2008, revised 2009) (emphasis in the original). Additionally, Dr. John Butler, one of the foremost authorities on DNA and a regularly invited guest of the FBI's Scientific Working Group on DNA Analysis, instructs, "the importance of

DNA collection cannot be overemphasized...[e]ach item must be packaged separately." John M.

Butler, *Fundamentals of Forensic DNA Typing, National Institute of Standard and Technology* at

80-82 (2010). The FBI similarly trains its agents to "be aware of cross contamination" when

collecting and handling evidence. *Serological and DNA Evidence*, FBI ERT Training

PowerPoint, Slide 56 of 94.

According to the Department of Justice "[t]he handling of physical evidence is one of the

most important factors of the investigation," and collected evidence needs to be packaged "to

avoid contamination and cross-contamination." *Crime Scene Investigation: A Guide for Law*

*Enforcement,* written and approved by the Teaching Working Group on Crime Scene

Investigation, published by the Department of Justice in January 2000 at 27-28. In fact, when

submitting evidence to the FBI Laboratory for analysis the FBI dictates to outside agencies to

"[w]rap and seal each item of evidence separately to avoid contamination." Handbook of

Forensic Services at 9 (2007).

Given the above comparisons, it is clear that Mr. Dehus' conclusions regarding evidence

collection methods are generally accepted within the relevant forensic science community, and in

particular, the agencies that served the government in this case. When viewed in conjunction

with his professional experience and specialized training, this general acceptance further

indicates the reliability of his conclusions. *Daubert*, 509 U.S. at 594.

For the government to allege that crime scene collection and processing is unsupported

and therefore unreliable is pure hypocrisy and belied by the protocols of the agencies that served

them in this investigation- specifically the FBI and Chicago Police.

5

### Mr. Dehus' Testimony is Highly Relevant

Mr. Dehus' proposed testimony is obviously relevant to this case. "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable." Fed. R. Evid. 401. At trial, the government will present physical evidence, such as DNA and ballistics and represent that it is reliable and worthy of belief. Mr. Dehus' testimony will contradict this notion by exposing the improprieties in the collection, documentation, and processing of evidence. (Dehus Report, pp. 1-3). He will also conclude that much of the collected evidence was never evaluated for trace evidence or DNA, casting added doubt on the strength and reliability of the evidence against Mr. Vance.

The government's contention that a "lost bullet" is irrelevant to this case is particularly worthy of mention.[1] (Govt motion pp. 14-15). The government wants to hide the matter of the "lost bullet" from the jury. It asks this Court to exclude any testimony about the "lost bullet" because it "does not intend on introducing any test results related to the item." (*Id.* at 15). Whether the government intends to introduce the lost bullet evidence is its business and irrelevant to the inquiry at hand. Mr. Vance is entitled to show that this missing piece of physical evidence is just another example of the government and its agents' failure to adhere to its own standards of evidence collection, including chain of custody. (Dehus Report, p. 3). The fact that their own practices and procedures have been violated assails the competency of the government's investigation as a whole. Plainly, this testimony is relevant.

### Mr. Dehus' Testimony will Assist the Trier of Fact

The government claims Mr. Dehus' testimony will not assist the trier of fact because his conclusions involve matters within the understanding of the average layperson. (Govt motion, p.

---

[1] Dorothy Sanders, a bank patron was wounded at the ISF bank robbery. Somehow, inexplicably, one of the bullets removed from her body has "gone missing."

13). This contention is absurd and contradicted by the training and education afforded to its law enforcement counterparts. It is well settled in law enforcement and forensic science that evidence collection, processing and analysis are highly specialized, technical areas that require specialized training and education. This is evidenced by the innumerable articles, treatises, texts, training manuals, educational programs and seminars dedicated to the teachings of the strict protocols associated with this discipline.

For example, the government argues that no technical knowledge is required to conclude that the latex gloves recovered in this case were improperly commingled into one evidence bag. [2] (Govt motion, p. 13). Were this conclusion so "obvious," as the government suggests, there would be no need for the Department of Justice, law enforcement agencies, and forensic laboratories to promulgate training manuals and strict policies emphasizing the prohibition against commingling multiple pieces of evidence in a single bag. *See, e.g.*, *Chicago Police Department Basic Recruit Training* at pp 13-14 (2008, revised 2009) ("[n]o item should come into contact with any other item and each item should be placed in separate containers.*); Crime Scene Investigation: A Guide for Law Enforcement* at 27-28, written and approved by the Teaching Working Group on Crime Scene Investigation, published by the Department of Justice (January 2000) ("[t]he handling of physical evidence is one of the most important factors of the investigation," and collected evidence needs to be packaged "to avoid contamination and cross-contamination.").

Similarly, the government contends that expert testimony is unnecessary for the jury to understand the consequences of failing to properly photograph and document the collected evidence. (Govt motion, p. 13). This is not common knowledge. Untold numbers of educational

---

[2] Curiously, the government appears to concede the gloves were improperly commingled, but wants the jury to figure out the consequences of the commingling for themselves---impossible.

courses and programs are offered by various agencies emphasizing these principles. *See, e.g., Collecting DNA Evidence at Property Crime Scenes,* Slide 22 of 28, online course provided by the Federal Government, available at http://dna.gov/training/property-crime (updated March 17, 2009)(A clear, well-documented chain of custody should be established through a process that includes the following: taking notes, including the documentation of the recovery location, the time and date recovered or received, description of the item, condition of the item and any unusual markings or alterations to the item); *Serological and DNA Evidence*, FBI ERT Training PowerPoint, Slide 56 of 94. (Photograph and document all evidence prior to collecting). [3]

The crux of the government's argument seems to be that Mr. Dehus could not possibly qualify as an expert because his conclusions are not based in hard science. (Govt motion, pp. 9-12). First, his conclusions and opinions are based on forensic science. Second, Rule 702 is patently clear that, "technical" and other "specialized knowledge" are the proper subject for expert testimony. Moreover, this circuit routinely permits expert testimony in areas outright lacking in technical or scientific bases. In narcotics cases, for example, the government often enlists law enforcement officers as so-called "gang" or "drug experts," who testify on subjects that arguably are within the ken of the average juror. See *United States v. Nobles*, 69 F.3d 172, 183-84 (7th Cir. 1995)(DEA agent qualified as an expert testified that pagers are a "tool of the drug trade" and that cash is the preferred method of payment for drug transactions); *United States v. Milbrook*, 553 F.3d 1057, 1064-64 (7th Cir. 2009)(Court approved expert testimony on the significance of a large amount of small-denomination bills found in an alleged drug dealer's pocket). Mr. Dehus' testimony will touch on complex issues that require specialized skills and

---

[3] See Vance's forthcoming Motion to Exclude DNA Evidence for added support that the protocols associated with evidence collection and processing are scientific, technical, strict, and outside the understanding of the average juror.

knowledge in forensic knowledge, outside of the common understanding of the jury. (See Dehus Report, pp. 1-3).

### III.     Mr. Dehus is Distinctly Qualified to Provide Expert Testimony

The government maintains that Mr. Dehus is not qualified to testify as an expert. (Govt motion, p. 6). It attempts to muddy his stellar professional reputation by first, cherry picking a few unrelated cases in which he served as an expert witness and then mischaracterizing their facts. None of the cases advanced by the government impugns Mr. Dehus' expertise in forensic science, nor bear upon his qualifications to testify as an expert herein. For example, in *State v. Pullen*, 2003 WL 22682067 (Ohio App. 2d Dist. 2003), the issue was whether Mr. Dehus was an expert in developing latent fingerprints, which he never claimed as his area of expertise. Here, Mr. Dehus is not being offered to opine about the development of latent fingerprints, but rather about the collection, documentation, and processing of evidence, all areas in which he is well qualified. *Pullen* is inapplicable.

The additional cases mentioned by the government are equally irrelevant. In both *State v. Jinks*, 2000 WL 492100 (Ohio App. Apr. 20, 2000) and *Knipp v. Kentucky* 2005 WL 387276 (Ky. Feb. 17, 2005), Mr. Dehus was qualified to testify as an expert, and neither reviewing court took issue with this qualification. In *State v. Ward*, 2001 WL 220244 (Ohio App. March 2, 2001), when Mr. Dehus was cross-examined about his certification as a breathalyzer technician, an area in which he never claimed expertise, he agreed, he was not. Only law enforcement officers are certified to administer breathalyzer tests. Likewise, *Holbrook v. Kingsgate Condominium Assoc.*, 2010 WL 764061 (Ohio App. March 8, 2010) is irrelevant to our inquiry. There was no challenge to Mr. Dehus' expertise.[4] Mr. Dehus has testified thousands of times.

---

[4] Mr. Dehus was never called to testify in Holbrook. The case was resolved by summary judgment.

The government's attempt to disqualify him based on a few cross examinations that lack any relationship to the issues herein is a desperate attempt to conceal its flawed investigation in this matter.

The government complains that Mr. Vance's disclosures are not sufficiently detailed to determine Mr. Dehus' level of expertise in "the topics at issue in this case." (Govt motion, p. 6). This is absurd. The government was provided a copy of Mr. Dehus' CV, which plainly demonstrates that his entire professional life has been devoted to forensic science. The "topics at issue in this case" are the "proper methodology and procedures for the collection, documentation and processing of evidence." (Dehus Disclosure, p. 1). Mr. Dehus has significant education, training and professional experience in every one of these areas. He has owned and served as president of Law-Science Technologies, a forensic testing firm, for 24 years. He served as a Criminalist and Technical Supervisor at the Miami Valley Regional Crime Laboratory for ten years. Mr. Dehus performed and supervised forensic analyses for decades. Undoubtedly, he possesses specialized knowledge regarding the proper methods of collecting, documenting, and processing evidence. In fact, he authored an article on the topic, specifically, "The Collection and Analysis of Physical Evidence from Sexual Assault Victims." (CV, p. 3). Over the years, Mr. Dehus taught Criminalistics and Forensic Science, courses of study that focus heavily on the proper collection and processing of evidence.

Mr. Dehus' expertise is unambiguous. His work experience, teaching experience, education and training plainly establish that he has specialized knowledge in forensic science, and more specifically, in the proper methodology and procedures for the collection, documentation, and processing of evidence. This more than qualifies him as an expert under Federal Rule of Evidence 702.

**IV.    Mr. Vance's Disclosures Comply with Fed. R. Crim. P. 16(b)(1)(C)**

Finally, the government's request for a more detailed proffer of Mr. Dehus' testimony should be denied.  The government contends that Mr. Dehus has not adequately explained the bases for his opinions.  (Govt motion, p. 9).  Mr. Dehus explicitly states in his report that his "observations and opinions" are based upon the materials he reviewed, namely, "Chicago Police Department reports, crime scene photos, crime scene sketches, crime scene photographs, Illinois State Police Laboratory report, witness statements, security camera videos, and other various materials." (Dehus Report, p. 1). His report demonstrates that his conclusions, many of which are specific to a singular piece of physical evidence, are based on a comparison of the specific procedures used by law enforcement and other government agencies in this case against "standard forensic science procedures." (Dehus Report, pp. 1-3).  Furthermore, Mr. Dehus' CV discloses that his opinions are derived from his professional experience, his significant training and his extensive knowledge of standard forensic science principles.  Mr. Vance's disclosure fully complies with Rule 16(b)(1)(C).

**V.    Conclusion**

For the reasons stated above, Mr. Vance respectfully requests that this Court deny the government's motion *in limine* to bar Mr. Dehus' testimony, deny the request for a *Daubert* hearing, and deny any further relief the government seeks relating to Mr. Dehus.

Respectfully submitted,

_____
S/Ellen R. Domph

Ellen R. Domph
53 W. Jackson Blvd, Ste 1544
Chicago, IL 60604
312-922-2525

11

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing, David Vance's **REPSONSE TO THE GOVERNMENT'S MOTION *IN LIMINE* TO BAR DEFENSE EXPERT TESTIMONY** was served on June13, 2011, in accordance with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF Filers.

s/ Ellen R. Domph
**ELLEN R. DOMPH**
53 W. Jackson, Suite 1544
Chicago, Illinois 60604
(312) 922-2525

12