# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07 CR 0351 |
| | ) | |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| DAVID VANCE | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The United States of America (the "government") has moved *in limine* to bar the testimony of Larry M. Dehus, the defense's proposed expert witness. For the reasons set forth below, the motion is granted.

### I. BACKGROUND

David Vance is charged with committing two armed bank robberies. Vance's attorneys hired Dehus to evaluate certain discovery materials "with respect to crime scene processing procedures, proper evidence handling, sampling and testing procedures, and the degree to which all potential evidence had been evaluated." (United States' Mot. *In Limine* to Bar Defense Expert Testimony Ex. A, ECF No. 213.) These discovery materials included reports completed by the Chicago Police Department and the Illinois State Police Laboratory, photos and sketches of the crime scene, witness statements, security camera videos, and "other various materials." (*Id.*) Dehus formed the following opinions about the procedures for evidence collection and analysis followed in the investigation of the bank robberies in which Vance is alleged to have been involved:

1

A) The crime scenes are processed by two different agencies. This appeared to result in a lack of coordination in the collection and submission of the evidence coming from multiple sources. Based upon the lack of coordination, labeling and continuity, it is not possible to determine if the chain of custody has been compromised for many of the evidence items.

B) Latex Gloves – This examiner observed numerous problems with respect to the collection, documentation, sampling, and handling of these gloves. These current concerns are as follows:

   1. The latex gloves were improperly collected in that as many as ten gloves were placed together in a single package as opposed to being properly packaged separately.

   2. The lack of due care in the collection and handling of the glove evidence is evidenced by the discrepancy in the actual number of gloves being submitted. In one exhibit, The Chicago Police Department said there were 12 latex gloves and the Illinois State Police Lab reported that there were 13. In a second exhibit, a discrepancy report states that 9 latex gloves were reported as submitted, but 10 were actually received by the Illinois State Forensic Police Lab.

   3. This examiner did not find documentation in either photographs or sketches to show the exact location where each of these gloves were found and collected. Photographs should have been taken of all of the gloves as found and then photographic documentation [sic] to show their collection and preservation.

   4. The gloves were submitted with various types of trace evidence materials that were described but never evaluated.

   5. The sampling of the gloves for DNA testing was improper. Most of the gloves were sampled using the same swab to sample the interior and exterior of gloves together. The exterior and interior of the gloves should always be sampled separately for obvious reasons.

C) There is no indication that all of the clothing of Tramaine [sic] Gibson had been tested with respect to gunshot evidence or other trace evidence.

D) There is no indication that the clothing of the two security guards had been tested with respect to gunshot evidence or other trace evidence.

E) A bullet was reported to have been recovered from Dorothy Sanders on June 4, 2007, at Advocate Christ Hospital. There was no indication as to the time that it was recovered or the [sic] proper record keeping regarding a chain of evidence. Notations indicate that Det. M.L. Frasier got the bullet from Gerri Wetzel in the Pathology Department at Advocate Christ Hospital on that date.

F) A large number of evidence items had been recovered from the 1991 Olds Delta 88 and this list includes: swabs from the steering wheel, swabs from the armrest, vacuuming samples from the interior, floor mats, contents of rear ashtray, torn material from a right rear fender. There is no indication that trace evidence from any of these items had been evaluated.

G) The proper accounting of evidence items is important to insure its [sic] integrity. An Illinois State Police Lab discrepancy notification concerning latent print lifts filed 8-28-10, more than three years after the evidence was collected, demonstrates extremely poor accountability for the evidence.

It is the opinion of this examiner that the evidence collection procedures, documentation, and processing of the evidence do not comply with standard forensic science procedures. This has resulted in evidence being lost, contaminated, and not completely evaluated.

(*Id.*) The above constitutes substantially all of the Dehus' report, which is laid out in a three-page letter dated March 24, 2011. Dehus does not explain how he reached these conclusions, other than to note that "[t]he above is a summary of my findings that were noted with respect to crime scene processing, evidence collection, evidence submission, and evidence evaluation after a review of voluminous materials in this matter." (*Id.*) According to Vance, Dehus will "testify about proper methodology and procedures for the collection, documentation and processing of evidence and will conclude that in the David Vance case, the collection procedures, documentation, and processing of evidence did not comply with standard forensic science procedures." (*Id.*)

## II. LEGAL STANDARD

3

Federal Rule of Evidence 702 governs the admission of expert testimony. Rule 702 provides:

> If scientific, technical, or otherwise specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Thus, expert testimony is not admissible unless it is relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). Expert witnesses must have the "knowledge, skill, experience, training, or education" to qualify as an expert; the methodology underlying the expert's testimony must be reliable; and the expert's testimony must help the trier of fact understand the evidence or determine a fact at issue. *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010); *Ervin*, 492 F.3d at 904; Fed. R. Evid. 702; *see Smith v. Ford Motor Co.*, 215 F.3d 713, 721 (7th Cir. 2000) ("[I]n order for an expert's testimony to qualify as 'relevant' under Rule 702 it must assist the jury in determining *any* fact at issue in the case."). In determining whether the expert's methodology is reliable, the court may consider "(1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether it has been generally accepted within the relevant scientific community." *Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 824 (7th Cir. 2010) (*citing Daubert*, 509 U.S. at 593-94.).

Also relevant to the government's motion is Federal Rule of Evidence 403 and a portion of Federal Rule of Criminal Procedure 16. Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403. In addition, Rule 16[1] "says that if (at defense request) the prosecution discloses details of expected expert testimony, then the defense must do so too, revealing 'the witness's opinions, the bases and reasons for those opinions, and the witness's qualification[s]'." *United States v. Rettenberger*, 344 F.3d 702, 706 (7th Cir. 2003). "The rule requires 'a summary of the expected testimony, not a list of topics.'" *Id.* (quoting *United States v. Duvall*, 272 F.3d 825, 828 (7th Cir. 2001)). "The level of detail of this summary depends on the complexity of the expert testimony." *United States v. Caputo*, 382 F. Supp. 2d 1045, 1049 (N.D. Ill. 2005) (citing *United States v. Jackson*, 51 F.3d 646, 651 (7th Cir. 1995)). Accordingly, expert witness testimony involving "technical or scientific evidence[ ] may require greater disclosure [than testimony based on experience], including written and oral reports, tests, investigations, and any other information that may be recognized as a legitimate basis for an opinion under [Federal

---

[1] Federal Rule of Criminal Procedure 16(b)(1)(C) provides:

The defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial, if--

(i) the defendant requests disclosure under subdivision (a)(1)(G) and the government complies; or

(ii) the defendant has given notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition.

This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Rule of Evidence 703]." *Jackson*, 51 F.3d at 621. In addition, the Advisory Committee notes explain that this rule is "intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R. Crim. P. 16 advisory committee's notes.

### III. ANALYSIS

**A. Dehus' Disclosure Does Not Establish that He Has the Qualifications to Testify as an Expert.**

Vance's disclosure – which consists of the report described above, a letter from Vance's attorney summarizing Dehus' findings, and Dehus' curriculum vitae – does not adequately describe Dehus' qualifications as required by Federal Rule of Criminal Procedure 16(b)(1)(C). As a result, Vance has not established that Dehus has the "knowledge, skill, experience, training, or education," Fed. R. Evid. 702, to qualify as an expert witness on "crime scene processing procedures, proper evidence handling, sampling and testing procedures, and the degree to which all potential evidence had been evaluated." (United States' Mot. *In Limine* to Bar Defense Expert Testimony Ex. A, ECF No. 213.) According to Dehus' curriculum vitae, Dehus earned his bachelor's degree in biology (with minors in chemistry and psychology) from Otterbein College in 1965, earned his master's degree in "biology-biochemistry" at Wright State University in 1974; has been trained in forensic microscopy, forensic serology, accident reconstruction, microscopy of hairs, forensic geology, DNA analysis, the cause and origin of fires and explosions, and "BAC DataMaster" (which appears to have something to do with field sobriety testing); worked as a criminalist in a crime lab for three years, then as a technical supervisor in a crime lab for seven years; taught courses on criminalistics, forensic

sciences, and criminal justice; and is a member of two professional organizations for forensic scientists, and has served as a consultant for 28 years (24 years of which he spent testing criminal evidence for defense attorneys and prosecutors). (United States' Mot. *In Limine* to Bar Defense Expert Testimony Ex. B, ECF No. 213.) In addition, Dehus published an article entitled "The Collection and Analysis of Physical Evidence from Sexual Assault Victims" in 1980. (*Id.*)

It is clear that some of Dehus' experience is too dated to qualify him to opine on current procedures for evidence collection and analysis. More often, Dehus does not indicate when he obtained certain experience, leaving the court unable to determine whether and how Dehus has stayed current with the procedures for evidence collection and analysis. In addition, Dehus does not define "forensic microscopy", "forensic serology", "microscopy of hairs", "forensic geology", or what he means by "DNA analysis," let alone how training in these areas qualifies him to opine as he does about proper procedures for maintaining a chain of custody, collecting and analyzing ballistics evidence, or collecting DNA evidence or gunshot residue from physical evidence such as latex gloves, the interior of a car, or clothing. Although Dehus indicates that he worked in a crime lab at some point, he does not indicate the skills he obtained from that position or whether he had specific experience collecting and analyzing ballistics evidence, DNA evidence or gunshot residue, or maintaining a chain of custody.

The paucity of information conveyed about Dehus' pertinent qualifications is surprising given that Dehus claims to have testified over 1500 times as an expert witness, including in federal court. In sum, because Vance's disclosures do not adequately describe Dehus' qualifications as required by Federal Rule of Criminal Procedure

7

16(b)(1)(C), the court cannot discern whether Dehus has the depth or recency of experience that would qualify him to testify as an expert on proper procedures for the collection and analysis of evidence. While the government's motion to exclude Dehus' expert testimony could be granted on this basis alone, the court will address other deficiencies for the sake of completeness.

B.  **Dehus' Disclosure Does Not Establish that his Methodology Is Reliable.**

In addition, the court cannot conclude that Dehus' methodology is reliable since Dehus did not adequately describe the bases and reasons for his opinions as required by Federal Rule of Criminal Procedure 16(b)(1)(C). As an initial matter, Dehus reveals only some of the materials he relied on in forming his opinions - reports completed by the Chicago Police Department and the Illinois State Police Laboratory, photos and sketches of the crime scene, witness statements, and security camera videos. (United States' Mot. *In Limine* to Bar Defense Expert Testimony Ex. A, ECF No. 213.) His statement that he also relied on "other various materials" is not helpful. (*Id.*). Indeed, "[t]he soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact . . . ." *Smith*, 215 F.3d at 718. However, the jury cannot determine whether the factual underpinnings of Dehus' opinions are sound if Dehus does not disclose all of the materials on which he relied in forming his opinions. Moreover, the government cannot properly prepare for cross-examination or procure rebuttal evidence without proper notice of the materials on which Dehus is basing his opinions.

In addition, Dehus does not reveal what methods he used to reach his conclusions or what manuals or other reference materials, if any, he relied upon, other than his noting

that he reviewed voluminous materials. (*Id.*) The court is left to wonder whether he simply read certain materials and weighed the evidence, which would be improper. *See Noller v. London & Lancashire Indem. Co. of Am.*, 103 F.2d 622, 623 (7th Cir. 1939) ("The jurors are the sole and exclusive judges of the facts, of the credibility of the witnesses, and of the weight of the evidence.") Vance argues that Dehus' opinions are based on his experience, but nowhere was this indicated in Dehus' report, nor does Dehus hint at the nature of the experience on which he relied. While it is true that "[a]n expert's testimony is not unreliable simply because it is founded on his experience rather than data," *Metavante Corp. v. Emigrant Savings Bank*, 619 F.3d 748, 761 & n.8 (7th Cir. 2010) ("Criminal cases, for instance, are replete with examples of experts, such as police officers or informants, qualified by experience."), as explained above, Dehus has not established that he has the requisite experience to qualify as an expert on the proper procedures for evidence collection and analysis. Had Dehus shown that he possesses the relevant qualifications, perhaps he could have assisted the jury by testifying about what is currently accepted as proper procedure for evidence collection and analysis. However, since Dehus has not shown that he has the relevant expertise, the court cannot conclude that Dehus' testimony would do anything other than invade the province of the jury. Indeed, allowing Dehus to testify based on nothing more than his review of certain discovery materials could give the jury the impression that he did something more than simply review the materials, which the jury can do itself. *See United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996) ("Unless the expertise adds something, the expert at best is offering a gratuitous opinion, and at worst is exerting undue influence on the jury that would be subject to control under Rule 403.")

Accordingly, even if Dehus' summary had adequately described his qualifications and opinions, his report and testimony would have been excluded for failure to adequately describe the bases and reasons for his opinions.

C.  **Dehus Has Not Established that his Proposed Testimony Would Help the Jury Understand the Evidence or Determine a Fact in Issue.**

"In determining whether expert testimony will be helpful to the jury in a particular case, the court is required to evaluate 'the state of knowledge presently existing about the subject of the proposed testimony' in light of its 'appraisal of the facts of the case.'" *United States v. Brown*, 7 F.3d 648, 651-52 (7th Cir. 1993) (quoting *United States v. DeSoto*, 885 F.2d 354, 359 n.3 (7th Cir. 1989)). "Expert testimony is not admissible under Rule 702 if it will not assist the jury in understanding the evidence or determining a fact in issue or it is purely speculative." *United States v. Davis*, 772 F.2d 1339, 1333-43 (7th Cir. 1985) (citing *United States v. West*, 670 F.2d 675, 682-83 (7th Cir. 1982)).

It is unclear whether several of Dehus' opinions would "assist the trier of fact to understand the evidence or determine a fact in issue" as required by Federal Rule of Evidence 702. For example, Dehus opines that "[t]here is no indication that all of the clothing of Tramiane [sic] Gibson had been tested with respect to gunshot evidence or trace evidence." (United States' Mot. *In Limine* to Bar Defense Expert Testimony Ex. A, ECF No. 213.) Yet, since Dehus does not indicate the specific materials on which he based this opinion, the court cannot determine whether Dehus merely read a note on a sheet of paper that said "not tested" or whether Dehus decoded an abbreviation that the average juror would find unintelligible. In addition, Dehus is of the opinion that the investigators did not exercise "due care" since one document said that there were 12 latex

gloves collected while another said there were 13. Noting discrepancies in documentation is within the understanding of the average juror. The jury, not an expert, should be charged with judging whether such discrepancies meant that the investigators did not use "due care."

Accordingly, even had Vance's disclosure adequately described Dehus' opinions, qualifications, and the bases and reasons for those opinions as required by Federal Rule of Criminal Procedure 16(b)(1)(C), several of Dehus' opinions would have been excluded because they do not assist the jury.

### III. CONCLUSION

Dehus' report is totally conclusory and completely inadequate to inform the court of: (1) the knowledge, skill, experience, training or education on which he relied in forming his opinions; (2) the methodology, if any, he utilized in reaching his opinions and (3) in some cases, such as the lack of certain testing, whether he will be telling the jury anything that it cannot easily discern itself. He has not indicated whether he is relying on any scientific theory, whether any such theory has been tested and whether it has been subjected to peer review and publication, among other things. Moreover, he has not indicated whether, if the evidence collection procedures were improper (such as placing 10 gloves in one package rather than in 10 packages or failing to evaluate certain trace evidence), there is any consequence in terms of the reliability of the evidence being offered by the government. Dehus' report contains no opinions about any such consequence of the government's allegedly improper evidence-gathering techniques, raising issues about his testimony's relevance. If the government's evidence collecting methods impair the reliability of the government's evidence, not only does Dehus' report

fail to so indicate, but no basis for any such opinion is given, rendering his testimony inadmissible under Rule 702, Rule 16, and *Daubert*. Without this information, the court cannot do its job as gatekeeper and the government cannot prepare to meet Dehus' testimony. Given the foregoing, the government's motion to bar Dehus' testimony is granted.

ENTER:

\_\_\_\_/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 5, 2011